# In the United States Court of Federal Claims

<table>
<tr><td>

MASSMAN CONSTRUCTION CO.,

       *Plaintiff*,

v.

THE UNITED STATES,

       *Defendant.*

</td><td>

No. 25-2158
(Filed: July 7, 2026) [1]
Filed under seal: June 15, 2026
Reissued: July 7, 2026

</td></tr>
</table>

*Dirk Haire, David P.J. Timm, & Michael J. Brewer*, Burr & Forman LLP, Washington, D.C., for Plaintiff.

*Mariana Teresa Acevedo*, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

**OPINION AND ORDER**

**LERNER,** *Judge*.

## I.    Introduction

Plaintiff Massman Construction Co. ("Massman") brings this post-award bid protest challenging a contract award by the U.S. Army Corp of Engineers, Tulsa District ("USACE" or "Agency") for the construction of the Webbers Falls Tainter Gate Replacement & Repair, Webbers Falls Lock & Dam ("L&D") 16, in Gore, Oklahoma ("Project" or "Contract").  Am. Compl. ¶ 1, ECF No. 25.  The Contract was originally awarded to McMillen, Inc. ("McMillen").  After Massman filed its protest, the Court remanded this matter back to the Agency at its request to take partial corrective action.  ECF No. 17.  The Agency took that action but ultimately re-awarded the Contract to McMillen.  ECF No. 22 at 1.

Massman now argues the Agency's corrective action did not cure the prejudice from the original award and is therefore not moot.  Am. Compl. ¶ 9.

Currently before the Court are the parties' cross-motions for judgment on the administrative record.  Pl.'s Mot. for J. on Admin. R. ("Pl.'s MJAR"), ECF No. 26; Def.'s Mot. for J. on Admin. R. ("Def.'s MJAR"), ECF No. 29.  Plaintiff has not demonstrated that the Agency's ratings for Past Performance and Technical Approach were without a rational basis.

---

[1] This Opinion was filed under seal on June 15, 2026.  ECF No. 39.  The parties jointly proposed redactions.  ECF No. 46.  Accordingly, the Court reissues this Opinion with the agreed upon redactions, which are noted with bracketed asterisks ([***]) or redacted images.

And to the extent the Agency's original exercise of options was unlawful, its partial corrective action cured any violation and resulting prejudice.  But USACE did not rationally explain McMillen's higher rating for the "Organization" subfactor, which formed the basis for the Agency's finding that the proposals were technically equivalent.  The Agency, on remand, must either justify this disparity or explain why McMillen's lower-priced, but technically inferior proposal provides the best value to the government.

Accordingly, Plaintiff's Motion for Judgment on the Administrative Record is **GRANTED-IN-PART AND DENIED-IN-PART**, and Defendant's Cross-Motion for Judgment on the Administrative Record is **GRANTED-IN-PART AND DENIED-IN-PART**.  Count III of Plaintiff's Amended Complaint is **DISMISSED AS MOOT**.

## II.    Background

### A.    Solicitation and Evaluation

On July 11, 2025, the USACE issued Request for Proposals No. W912BV25RA018 ("RFP" or "Solicitation") as a negotiated RFP under Federal Acquisition Regulation ("FAR") Part 15.  Tab 26 at Admin. R. ("AR") 130.  The Solicitation sought a prime construction contractor for the design of new Tainter gates[2] to replace the existing spillway gates at Webbers Falls L&D.  *Id.*  The Source Selection Plan ("SSP") noted the project would also have "options to repair other gates."  *Id.*  The final RFP required the successful offeror to replace or repair Tainter Gates 7, 8, 11, 5, 10 & 12.  Tab 152 at AR 4544.

The SSP described the work as follows:

The gates will be designed to work within the constraints of the existing structure geometry.  The existing trunnion yoke anchorage, trunnion girder, trunnion girder anchorage, and mechanical equipment will be re-used.  The capacity of the existing features will be verified with the new gate weight and operating loads.  The construction contract will include fabrication, delivery, installation, removal of the existing gates, and other related activities such as setting stoplogs, storage, and salvage.  The gate design will be modernized, detailing will be improved to minimize fatigue/fracture concerns, and materials and fabrication requirements updated to be consistent with current guidance.

Tab 26 at AR 130.

The RFP's objective was "to identify and select the offeror that can best meet the Government's requirements at a reasonable price."  *Id.*  Specifically, the Solicitation stated the award would go to the proposal with "the best overall value to the Government, considering all non-price factors described herein, and price."  Tab 30 at AR 303.

---

[2] A Tainter gate is a type of radial arm floodgate used in dams and canal locks to control water flow.  *See Tainter Gate*, Dunn County Historical Society, https://www.dunnhistory.org/tainter-gate (last visited May 14, 2026).

The Solicitation listed five evaluation factors: Factor 1—Past Performance; Factor 2—Management Approach; Factor 3—Performance Capability; Factor 4—Participation of Small Business Concerns; and Factor 5—Price. *Id.* at 306–07. The first four factors were considered "technical factors" and listed in descending order of importance. *Id.*; Tab 26 at AR 132. When combined, the technical factors were considered significantly more important than price. *See* Tab 26 at AR 132; Tab 30 at AR 303.

For Factor 1 (Past Performance), the Agency stated it would consider "recency, relevancy (including context of data), and quality (including general trends in contractor performance and source of information)." Tab 26 at AR 141. Adjectival ratings were assigned for both Past Performance Relevancy and Performance Confidence. *Id.* at 141–42. The ratings applied the following criteria:

Past Performance Ratings

**Very Relevant**— Present/past performance effort involved essentially the same scope and magnitude of effort and complexities this solicitation requires.

**Relevant**— Present/past performance effort involved similar scope and magnitude of effort and complexities this solicitation requires.

**Somewhat Relevant**— Present/past performance effort involved some of the scope and magnitude of effort and complexities this solicitation requires.

**Not Relevant**— Present/past performance effort involved little or none of the scope and magnitude of effort and complexities this solicitation requires.

Performance Confidence Ratings

**Substantial Confidence**— Based on the offeror's recent/relevant performance record, the Government has a high expectation that the offeror will successfully perform the required effort.

**Satisfactory Confidence**— Based on the offeror's recent/relevant performance record, the Government has a reasonable expectation that the offeror will successfully perform the required effort.

**Neutral Confidence**— No recent/relevant performance record is available or the offeror's performance record is so sparse that no meaningful confidence assessment rating can be reasonably assigned. The offeror may not be evaluated favorably or unfavorably on the factor of past performance.

**Limited Confidence**— Based on the offeror's recent/relevant performance record, the Government has a low expectation that the offeror will successfully perform the required effort.

**No Confidence**— Based on the offeror's recent/relevant performance record, the Government has no expectation that the offeror will be able to successfully perform the required effort.

*Id*.

For Factors 2 (Management Approach) and 3 (Performance Capability), the Agency used adjectival ratings of Outstanding, Good, Acceptable, Marginal, or Unacceptable.  Tab 30 at AR 324–25.  The ratings were assigned using the following criteria:

**Outstanding**— Proposal indicates an exceptional approach and understanding of the requirements and contains multiple strengths, and risk of unsuccessful performance is low.

**Good**— Proposal indicates a thorough approach and understanding of the requirements and contains at least one strength, and risk of unsuccessful performance is low to moderate.

**Acceptable**— Proposal meets requirements and indicates an adequate approach and understanding of the requirements, and risk of unsuccessful performance is no worse than moderate.

**Marginal**— Proposal has not demonstrated an adequate approach and understanding of the requirements, and/or risk of unsuccessful performance is high.

**Unacceptable**— Proposal does not meet requirements of the solicitation, and thus, contains one or more deficiencies, and/or risk of unsuccessful performance is unacceptable.  Proposal is unawardable.

*Id*.

For Factor 4 (Small Business Participation), the agency used similar adjectival ratings:

**Outstanding**— Proposal indicates an exceptional approach and understanding of the small business objectives.

**Good**— Proposal indicates a thorough approach and understanding of the small business objectives.

**Acceptable**— Proposal indicates an adequate approach and understanding of small business objectives.

**Marginal**— Proposal has not demonstrated an adequate approach and understanding of the small business objectives.

**Unacceptable**— Proposal does not meet small business objectives.

Tab 26 at AR 142.

Factors 2 and 3 also contained subfactors.  Tab 152 at AR 4545.  Factor 2 contained the following subfactors: Subfactor 1—Technical Approach; Subfactor 2—Organization; Subfactor 3—Key Personnel.  *Id.*  These subfactors used the same adjectival ratings as Factor 2 overall and were also listed in descending order of importance.  *Id.*  For Technical Approach, offerors were required to "[d]iscuss how non-performance by subcontractors is

handled by the general contractor." Tab 30 at AR 312–13.  The Agency preferred "self-performance" based on cost savings from fewer subcontractors.  *Id.* at 313.  Offerors were required to provide unequivocal letters of commitment from key subcontractors for scopes "not to be self-performed," including "Marine Construction."  *Id.* at 314.

Factor 3 included only one subfactor: Proposed Contract Duration and Summary Schedule.  Tab 152 at AR 4545.

### B.    Contract Options

The Solicitation contained four additional "options" on which offerors could bid in addition to the base option.  Tab 30 at AR 292–93.  The Solicitation incorporated FAR 52.217-5 (Evaluation of Options) by reference.  *Id.* at 336.  FAR 52.217-5 is used in solicitations when "(1) The solicitation contains an option clause; (2) An option is not to be exercised at the time of contract award; (3) A firm-fixed price contract . . . is contemplated; and (4) The contracting officer has determined that there is a reasonable likelihood that the option will be exercised." FAR 17.208(c).

On September 12, 2025, the Agency issued Amendment No. 5 to move the replacement of Tainter Gate 5 into Option No. 1, *i.e.*, the Agency separated the work for replacing Gates 7 and 5.  *See* Tab 56 at AR 1206.  The Agency requested changes to Massman's and McMillen's proposals when it issued Amendment No. 5.  Tab 96a at AR 3101; Tab 97a at AR 3122.  Both Massman and McMillen told the Agency that this Amendment impacted (and increased) the final price of their proposals.  Initial Source Selection Document ("Initial SSDD"), Tab 121 at AR 4044–45 (showing McMillen raised its proposed price from [***] to [***] and Massman raised its proposed price from [***] to [***]).

### C.    Initial Award

Massman and McMillen were the only two bidders to submit timely proposals in response to the Solicitation.  Initial SSDD at AR 4032.  A Source Selection Evaluation Board ("SSEB") reviewed and evaluated the proposals.  *Id.*  The initial ratings were as follows:

| OFFEROR | FACTOR 1 Past Performance | FACTOR 2 Management Approach | FACTOR 3 Performance Capability | FACTOR 4 Small Business Participation |
|---|---|---|---|---|
| Massman | Very Relevant / Substantial Confidence | Unacceptable | Unacceptable | Acceptable |
| McMillen | Very Relevant / Limited Confidence | Unacceptable | Unacceptable | Unacceptable |

*Id.*

5

The report included the following strengths, weaknesses, uncertainties, and deficiencies for each proposal, with explanations for each:

| Element | Offeror | |
|---|---|---|
| | **Massman** | **McMillen** |
| Factor 1 | **Very Relevant/Substantial** <br> 4 Strengths, 1 Weakness | **Very Relevant/Limited** <br> 1 Strength, 2 Uncertainties, 2 Deficiencies |
| Factor 2 | **Unacceptable** | **Unacceptable** |
| Subfactor 1 | Good <br> 4 Strengths, 2 Weaknesses | Good <br> 4 Strengths, 1 Weakness, 1 Uncertainty |
| Subfactor 2 | Acceptable <br> 1 Strength | Good <br> 2 Strengths |
| Subfactor 3 | Unacceptable <br> 1 Weakness, 5 Deficiencies, 1 Uncertainty | Unacceptable <br> 2 Strengths, 6 Deficiencies, 1 Uncertainty |
| Factor 3, Subfactor 1 | **Unacceptable** <br> 2 Strengths, 1 Deficiency, 1 Uncertainty | **Unacceptable** <br> 1 Strength, 2 Weaknesses, 2 Deficiencies |
| Factor 4 | **Acceptable** <br> 1 Strength | **Unacceptable** <br> 2 Deficiencies |

Def.'s MJAR at 9.

Following dialogue between the Agency and both Massman and McMillen on the weaknesses in their proposals, the offerors revised their technical proposals. *See* Tab 92 at AR 2528; Tab 93 at AR 2754. The supplemental SSEB report determined both offerors resolved all identified weaknesses, uncertainties, and deficiencies. Tab 83 at AR 2479–2506. Their revised proposals received the following ratings:

| OFFEROR | FACTOR 1 <br> Past Performance | FACTOR 2 <br> Management Approach | FACTOR 3 <br> Performance Capability | FACTOR 4 <br> Small Business Participation |
|---|---|---|---|---|
| Massman | Very Relevant / Substantial Confidence | ██████ | Good | Acceptable |
| McMillen | Very Relevant / Substantial Confidence | ██████ | Acceptable | Acceptable |

| OFFEROR | FACTOR 2 Subfactor 1 Technical Approach | FACTOR 2 Subfactor 2 Organization | FACTOR 2 Subfactor 3 Key Personnel |
|---|---|---|---|
| Massman | Good | ███████ | Good |
| McMillen | Good | ███████ | Good |

Initial SSDD at AR 4044.

Two subsequent amendments to the Solicitation led to final proposals due on September 22, 2025. *Id.* at AR 4042. After reevaluation, Massman's rating on Factor 4 (Small Business Participation) changed from "Acceptable" to "Marginal."[3] *Id.* at AR 4043.

The final price breakdown of each bid alongside the Independent Government Estimate[4] ("IGE") is as follows:

| | IGE | McMillen | Massman |
|---|---|---|---|
| Base Proposal (Replace Gate 7; Repair Gates 8 & 11) | ███ | ███ | ███ |
| Option 1 (Replace Gate 5) | | | |
| Option 2 (Repair Gate 10) | | | |
| Option 3 Repair Gate 12) | | | |
| | | | |
| Total Base & Options | ███ | ███ | ███ |

*Id.* at AR 4045.

Based on these ratings and prices, USACE determined that because "McMillen and Massman were found to be technically equal" and McMillen submitted the lowest price, "McMillen will receive award of this contract." *Id.* at AR 4046–47. The Agency exercised Options 2 and 3 alongside the Base Bid. *Id.* at AR 4047.

### D.    Corrective Action and Final Award

After Massman filed this protest, the Court remanded this matter to the Agency at USACE's request. *See infra* Section II.E. The Agency terminated the existing award for convenience and appointed a new SSA. ECF No. 17 at 1. It did not conduct another technical

---

[3] This factor was originally revised down to "Unacceptable" but was revised up to "Marginal" upon review by the Source Selection Authority ("SSA") in the Initial SSDD. *Id.* at AR 4043.
[4] An IGE is the government's estimate of the projected price or cost that a contractor would incur in the successful performance of a contract. *See* FAR 36.203(a).

evaluation or prepare a new SSEB Report "since none of the evaluation factors or criteria have changed." *Id.*

USACE again awarded the Contract to McMillen on March 31, 2026. Final Source Selection Decision Document ("Final SSDD"), Tab 152 at AR 4563–64. The SSA largely adopted the consensus ratings of the SSEB with the exception of Massman's Factor 4 (Participation of Small Business Concerns), which was revised from Marginal to Acceptable. However, the Final SSDD contained several material changes from the Initial SSDD.

First, the SSA revised Massman's Factor 4 (Small Business Participation) rating from "Marginal" to "Acceptable" because "Massman's failure to meet the small business minimum goals, while noted, is not fatal to the proposal and does not render the proposal unawardable." *Id.* at AR 4560. This revision equalized the Factor between the two offerors. *Id.* Second, unlike the Initial SSDD that found a tradeoff analysis "unnecessary," the SSA conducted a tradeoff analysis of each Factor and Subfactor. *Compare* Initial SSDD at AR 4046, *with* Final SSDD at AR 4560–63. The final ratings and prices were as follows:

| OFFEROR | FACTOR 1 Past Performance | FACTOR 2 Management Approach | FACTOR 3 Performance Capability | FACTOR 4 Small Business Participation |
|---|---|---|---|---|
| Massman | Very Relevant / Substantial Confidence | ██████ | Good | Acceptable |
| McMillen | Very Relevant / Substantial Confidence | ██████ | Acceptable | Acceptable |

| OFFEROR | FACTOR 2 Subfactor 1 Technical Approach | FACTOR 2 Subfactor 2 Organization | FACTOR 2 Subfactor 3 Key Personnel |
|---|---|---|---|
| Massman | Good | ██████ | Good |
| McMillen | Good | ██████ | Good |

8

| Line Item | IGE | McMillen | % vs IGE | Massman | % vs IGE |
|---|---|---|---|---|---|
| Base Proposal (Replace Gate 7; Repair Gates 8 & 11) | | | | | |
| Option 1 (Replace Gate 5) | | | | | |
| Option 2 (Repair Gate 10) | | | | | |
| Option 3 (Repair Gate 12) | | | | | |
| **Total Base & Options** | | | | | |

Final SSDD at AR 4560–61, 4558.

The SSA conducted a tradeoff analysis of each Factor and Subfactor. *Id.* at AR 4560–63. Each offeror had one advantage over the other. McMillen received a "[***]" to Massman's "[***]" on Factor 2, Subfactor 2 (Organization). And Massman received a "Good" to McMillen's "Acceptable" on Factor 3 (Performance Capability). The SSA's tradeoff analysis for Factor 1 and Factor 2, Subfactors 1 and 2 is as follows:

> Under Factor 1, Past Performance, I have determined that both offerors demonstrated relevant and recent experience performing work of similar size, scope, and complexity to the requirements of this solicitation. Both offerors received a consensus rating of Very Relevant/Substantial Confidence. I find the past performance of both offerors to be equal, and this factor does not distinguish between the two offerors in my best value determination.

> Under Factor 2, Subfactor 1, Technical Approach, I find that both offerors received a consensus rating of Good and that neither offeror holds a distinguishable advantage under this subfactor. McMillen demonstrated a highly detailed sequence of construction events, a thorough resourcing plan, and a sound understanding of the risks associated with both the base contract work and the optional items. Massman similarly demonstrated a clear and comprehensive understanding of the job steps, risks, and nuances of the project and presented a strong approach to safety and quality management. I am satisfied that both offerors understand the technical requirements of this solicitation, and I consider this subfactor equal between the two offerors.

> [***]

Final SSDD at AR 4561.

The SSA determined that these advantages offset each other because "McMillen's advantage resides within a more heavily weighted area of the evaluation while Massman's advantage resides within a less important evaluated factor." *Id.* at AR 4562. Thus, the SSA considered the proposals "technically equivalent overall" and awarded the Contract to McMillen

9

based on its lower total price.  *Id.* at AR 4562–63; *see also* FAR 52.217-5 ("[T]he Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement.  Evaluation of options will not obligate the Government to exercise the option(s).").

The Agency did not exercise any options under the re-awarded Contract.  Final SSDD at AR 4564 ("The base tasks shall be awarded to McMillen, and the Government reserves the right to exercise the options in accordance with the terms and conditions of the Solicitation.").

On November 18, 2025, after Massman filed a pre-filing notice, but before Massman filed its Complaint, the Agency asked McMillen to "confirm the supplier for the required crane and provide any other information on [its] access to this crane" based on Massman's pre-filing notice.  Tab 137 at AR 4288.  McMillen confirmed (1) it identified the [***] crane as the crane it would rent for the gate lift and (2) multiple companies had this crane or comparable cranes sufficient for the lift available for rental.  *Id.* at AR 4287.  The [***] crane was not mentioned in McMillen's proposal.  Pl.'s MJAR at 19.

### E.    Procedural History

Plaintiff filed its Complaint[5] on December 23, 2025.  Compl., ECF No. 1.  The Complaint contained four primary allegations: (1) the Agency's evaluation of Massman and McMillen's "Past Performance" was arbitrary and capricious; *id.* ¶¶ 71–74, (2) the Agency's evaluation of Massman and McMillen's "Technical Approach" was arbitrary and capricious; *id.* ¶¶ 76–79, (3) the Agency's exercise of options at the time of the award was unlawful because the Solicitation incorporated FAR 52.217-5; *id.* ¶¶ 81–85, and (4) the Agency arbitrarily assigned Massman a "Marginal" Small Business Participation score.  *Id.* ¶¶ 87–89.

The Court held a Joint Preliminary Status Conference and entered a briefing schedule on January 7, 2026.  ECF No. 9.  On February 13, 2026, Defendant moved to stay the briefing schedule "because the agency has been reconsidering its needs during the pendency of this matter and as a result this could lead to changes in requirements that would impact this case, to include possibly canceling the current procurement."  ECF No. 16 at 1.  The Court granted Defendant's unopposed Motion and ordered a Joint Status Report ("JSR") by February 24, 2026.  Order, *Massman Construction Co. v. United States*, No. 25-2158 (Fed. Cl. Feb. 13, 2026).

In lieu of a JSR, the Government filed a "Notice of Corrective Action and Motion to Remand and Stay Briefing Schedule."  ECF No. 17.  Defendant stated the Agency would take partial corrective action by issuing a new contract where "no options will be exercised at the time of award," which it claimed would moot Count IV of Plaintiff's Complaint.  *Id.* at 1.  Plaintiff

---

[5] Massman mislabeled the last two Counts in its original Complaint and did not include any "Count III."  *See* ECF No. 18 at 2 n.2.  This error was corrected in Plaintiff's Amended Complaint.  *See* Am. Compl.  The Court refers to the Counts as labeled in the Complaint when describing the original Complaint.

opposed remand, alleging the partial corrective action would not "remedy the prejudice claimed by [Plaintiff]." ECF No. 18 at 3.

The Court granted Defendant's Motion on March 18, 2026, finding that a short remand would "serve the interests of efficiency and judicial economy." ECF No. 21 at 2. The partial corrective action was ordered to be completed on or before April 1, 2026. *Id.*

The parties filed a JSR on April 3, 2026. ECF No. 22. The JSR stated while the partial corrective action was complete, the parties continued to disagree about whether the decision to not exercise options mooted Count IV of Plaintiff's Complaint. *Id.* at 1–3. However, the parties agreed that the revision of Massman's Factor 4 (Small Business Participation) rating from "Marginal" to "Acceptable" mooted Count V. *Id.* at 2. Subsequently, Plaintiff filed an Amended Complaint alongside its MJAR, which omitted Count V. Am. Compl.

The parties' dispositive motions are now fully briefed and ripe for review. *See* Pl.'s MJAR; Def.'s MJAR; Pl.'s Response and Reply ("Resp."), ECF No. 30; Def.'s Reply ("Reply"), ECF No. 31.

## III.   Jurisdiction and Legal Standards

### A.   Bid Protests and Standard of Review

The U.S. Court of Federal Claims reviews an agency's contract award under the standards set forth in the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(1), (4). The Court determines whether the Government "acted without rational basis or contrary to law when evaluating the bids and awarding the contract." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005).

A bid award may be set aside if either "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Off. Design Grp. v. United States*, 951 F.3d 1366, 1371 (Fed. Cir. 2020) (citation omitted). To find a rational basis, the Court must determine "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (citation omitted). To establish a procedural violation, "the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations." *Id*. (citation omitted). "De minimis errors in the procurement process do not justify relief." *Off. Design Grp.*, 951 F.3d at 1374 (citation omitted).

"Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998). But an "explicit explanation is not necessary . . . where the agency's decisional path is reasonably discernible." *DynCorp Int'l, LLC v. United States*, 10 F.4th 1300, 1315 (Fed. Cir. 2021) (quoting *Wheatland Tube Co.*, 161 F.3d at 1369–70).

"Generally speaking, an agency must evaluate an offeror's proposal based on the criteria set out in the solicitation." *Tetra Tech, Inc. v. United States*, 137 Fed. Cl. 367, 383 (2017). At

11

the same time, "an agency still enjoys 'great discretion in determining the scope of an evaluation factor.'" *Id.* (quoting *Forestry Surveys & Data v. United States*, 44 Fed. Cl. 493, 499 (1999)). "[W]hen weighing the merits of a proposal under a specific evaluation factor, an agency may consider all matters that offerors would reasonably have believed to be within the scope of the factor." *Id.* (quoting *Forestry Surveys & Data*, 44 Fed. Cl. at 497).

In addition to establishing agency error under the APA, a disappointed bidder must demonstrate that it was significantly prejudiced by that error. *Bannum, Inc.*, 404 F.3d at 1351. A bidder is significantly prejudiced if "there was a substantial chance it would have received the contract award but for" the agency's errors. *Id*. at 1353 (citation modified). "[T]here is no presumption of prejudice when a protestor demonstrates irrationality in an agency decision." *Sys. Stud. & Simulation v. United States,* 22 F.4th 994, 998 (Fed. Cir. 2021). Instead, "[t]he protestor must show prejudice under the usual standard. The Supreme Court has noted that, at least in some contexts, prejudice will be easily shown because the circumstances will make prejudice readily apparent." *Id.* (citation omitted).

### B.    Motion for Judgment on the Administrative Record ("MJAR")

Bid protests pursuant to 28 U.S.C. § 1491(b) are resolved via motions for judgment on the administrative record, Rule of the Court of Federal Claims ("RCFC") 52.1(c), a process "properly understood as intending to provide for an expedited trial on the record." *Bannum, Inc.*, 404 F.3d at 1356. The process is "designed to provide for trial on a paper record, allowing fact-finding by the trial court." *Id.* In deciding cross-MJARs, this Court considers "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence of record." *XOtech, LLC v. United States*, 950 F.3d 1376, 1380 (Fed. Cir. 2020) (quoting *Palantir USG, Inc. v. United States*, 904 F.3d 980, 989 (Fed. Cir. 2018)).

### C.    Mootness

Defendant argues its partial corrective action has rendered Count III of Plaintiff's Amended Complaint moot. Def.'s MJAR at 36–38. RCFC 12(h)(3) requires the Court to dismiss a claim at any time over which it lacks subject-matter jurisdiction. *See NEC Corp. v. United States*, 151 F.3d 1361, 1369 (Fed. Cir. 1998) ("If a case becomes moot it no longer presents a justiciable controversy over which a federal court may exercise jurisdiction.").

"In general, the Court should dismiss a claim when, during the course of litigation, it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue." *AccelGov, LLC v. United States*, 166 Fed. Cl. 606, 610 (2023) (citation modified); *see Guardian Moving & Storage Co., Inc. v. United States*, 657 F. App'x 1018, 1025 (Fed. Cir. 2016) (granting a government motion to dismiss in a bid protest action). "[T]he government bears the burden of demonstrating that any agency action moots a pending case." *AccelGov, LLC*, 166 Fed. Cl. at 610. "The salient question is whether the [agency's] corrective action has completely and irrevocably eradicated the effects of the alleged violation" of law or the solicitation. *McTech Corp. v. United States*, 105 Fed. Cl. 726, 731 (2012) (citation modified).

## IV.    Discussion

### A.    Count III of Plaintiff's Amended Complaint is Moot Because USACE's Partial Corrective Action Removes Any Potential Prejudice.

Despite the Agency's partial corrective action, *see supra* Section II.D, Massman continues to press its claim of prejudice by the Agency's resequencing of work between the Base and Option scopes in Amendment No. 5.  Pl.'s MJAR at 31–33.  In Amendment No. 5, USACE moved work for the replacement of Gate 5 from the Base scope to Option 1, separating the Gate 7 replacement scope and the Gate 5 replacement scope.  *Id.* at 32.  "Based directly on the separation of replacement work between the Base and Option scopes, and on the Solicitation's representation that options would ***not*** be exercised at the time of award, Massman increased its price because separating the replacement work on Gates 7 and 5 resulted in less efficient construction work and increased costs in connection with mobilization of critical equipment necessary to perform the replacement work."  *Id.*  But any argument Amendment No. 5 itself was improper is untimely because parties must "object to solicitation terms during the bidding process."  *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007).

Regardless of the merits of Massman's original contention that USACE was not permitted to exercise options at the time of the award, *see* Compl. ¶¶ 80–85, the Agency decided to award a new contract without exercising any options.  Def.'s MJAR at 36; *see* Final SSDD at AR 4563–64.  Defendant's corrective procedures "cancelled the agency's previous decision, rendering it a nullity."  *Syneren Techs. Corp. v. United States*, 166 F.4th 1040, 1045 (Fed. Cir. 2026).

McMillen and Massman were each aware of Amendment No. 5 and raised their prices accordingly.  Def.'s MJAR at 38.  Massman claims it was "uniquely prejudiced" because the price differential was ultimately dispositive in awarding the Contract to McMillen.  Resp. at 23.  But Massman simultaneously concedes "the issue on its own may not be dispositive."  *Id.*  And as the Government correctly states, "[b]oth offerors were in the exact same position, with the exact same information available to them."  Def.'s MJAR at 38.

Because the Government has met its burden to demonstrate its corrective action cured any prejudice from the alleged violation, Count III of Plaintiff's Amended Complaint is dismissed as moot.  *See* RCFC 12(h)(3).

### B.    USACE's "Past Performance" and "Technical Approach" Ratings Had a Rational Basis, but its "Organization" Subfactor Ratings were Inadequately Justified.

Massman argues the USACE acted arbitrarily and capriciously when it rated Massman and McMillen equivalently on three evaluation factors: (1) Factor 1 (Past Performance); (2) Factor 2, Subfactor 1 (Technical Approach); and (3) Factor 2, Subfactor 2 (Organization).  Pl.'s MJAR at 7.  While Massman makes specific arguments as to each of these factors, it argues overall that USACE "smoothed over" the differences between the two proposals in order to

13

ultimately select McMillen's lower-priced bid.[6]  *Id.* at 22.  The Solicitation established all other factors (when combined) as significantly more important than price.  Tab 30 at AR 303. Massman therefore believes the Agency "downplay[ed]" the strengths of its bid, which allowed cost to become the determinative factor.   Pl.'s MJAR at 26 (quoting *Femme Comp Inc. v. United States*, 83 Fed. Cl. 704, 768 (2008)).

As explained, Massman is correct only with regards to the Organization subfactor.

### 1.    Organization

Massman argues it should not have received a lower score on the "Organization" subfactor of Factor 2 (Management Approach) because its proposed document control system "is the same system" proposed by McMillen.  Resp. at 13; *see also* Pl.'s MJAR at 30–31.  Massman received an "[***]" rating, while McMillen received a "[***]" rating.  Def.'s MJAR at 13.

In the SSEB evaluation, Massman received one strength to McMillen's two strengths. Both offerors received strengths related to project organization and reporting structure.  *Compare* Final SSDD at AR 4548 (finding Massman "presents a good approach to project organization, a key factor being the [***]"), *with id.* at AR 4553 (finding McMillen "presents a good approach to project organization, a key factor being the [***]").  McMillen's additional strength came from "its approach to quality control utilizing internal document review controls and [a] 3-phase system" the SSEB found to be "very positive" and would "reduce[] performance risk to the Government."  *Id.* at AR 4553.

Defendant incorrectly suggests Massman's proposal contained only two sentences describing its control system.  Def.'s MJAR at 34 (citing Tab 110b at AR 3414).  But as Massman points out, it elaborated significantly on this brief description later in its proposal. Resp. at 14 (citing Tab 110b at AR 3424–25).  And McMillen's proposal describes "a three-phase control process with the same phases as Massman's: preparatory phase, initial inspection, and follow-up inspection."  Pl.'s MJAR at 31 (citing Tab 109a at AR 3246–47).  The parties' two proposals are below:

[***]

(depicting Tab 109a at AR 3246–47 (McMillen's Proposal); Tab 110b at AR 3424–25 (Massman's Proposal)).

The similarities in the proposals reveal disparate treatment.  The Agency treated Massman's Organization proposal differently when it is "substantively indistinguishable" from or "nearly identical" to the one in McMillen's proposal.  *Off. Design Grp.*, 951 F.3d at 1372 (citation modified); *see also AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 367 (2009) ("[W]here an evaluation scores two virtually identical proposals differently, such an inconsistent evaluation is quintessentially arbitrary, capricious and unfair."), *opinion clarified*, 87 Fed. Cl. 654 (2009).

---

[6] This argument is more specifically addressed in Section IV.C *infra*.

Defendant argues Massman's quality-control approach "did not rise to the same level of demonstrated quality control integration." Reply at 9 (citing Final SSDD at AR 4561). But the fact that Massman also proposed a three-phase system goes unaddressed. *See* Final SSDD at AR 4561. The SSA did not explain how "McMillen's three-phase system is more robust than Massman's or why McMillen's system, but not Massman's, 'meaningfully reduces performance risk to the Government.'" Resp. at 15 (quoting Final SSDD at AR 4561). The Court must defer to the Agency's subjective technical judgment, but it cannot defer to judgment that is not there. *See IAP Worldwide Servs., Inc. v. United States*, 159 Fed. Cl. 265, 286 (2022) (stating that while the court will sustain a decision lacking ideal clarity, it "will not put words in an agency's mouth or invent supporting rationales the agency has not itself articulated in the administrative record").

The SSA also noted another difference between the proposals in his tradeoff analysis: "McMillen's organizational structure places the [***], ensuring that [***] are not subordinate to forward construction progress." Final SSDD at AR 4561; *see* Tab 109a at AR 3244 (displaying McMillen's proposed organizational chart).

In contrast, Massman's proposed organizational structure placed its [***]. Tab 110b at AR 3426. This distinction is relevant under the Solicitation's criteria for the Organization subfactor: "[t]he Government will evaluate the clarity and strength of the overall organization and how well it is organized, structured and staffed to execute the entire scope of work." Tab 30 at AR 315.

However, both McMillen and Massman received strengths from the SSEB for their organizational structure because the [***] and [***] roles were not subordinate to the [***] role. Tab 80 at AR 2460, 2464. The SSA might have found that a more direct reporting relationship between these roles and the [***] role was a particular strength and distinction weighing in McMillen's favor. Final SSDD at AR 4561. But if the SSA did so, he needed to say so. *See Golden IT, LLC v. United States*, 177 Fed. Cl. 118, 136 (2025) (recognizing that even if "the administrative record doesn't tend to show that the agency made an error," the agency may be in violation of the APA where "[its] findings or decisions are conclusory or unexplained in the administrative record" because "the APA requires the government to show its work").

Because both offerors received strengths on this point, the Agency's path was not "reasonably discernable," making "explicit explanation" necessary. *See DynCorp Int'l*, 10 F.4th at 1315. Therefore, because the Agency's Organization rating disparity was without a rational basis, it was unlawful.

### 2. Past Performance

Both Massman and McMillen received "Very Relevant / Substantial Confidence" ratings on Factor 1. Final SSDD at AR 4560. Massman maintains "[t]he Agency's overall rating and its statements [in its evaluation of the proposals] do not match and could only be reached by ignoring unambiguous Solicitation language." Pl.'s MJAR at 22. Massman contrasts the four strengths it received in the initial, revised, and final Past Performance evaluations to McMillen's one strength alongside two deficiencies and two uncertainties. *Id.* at 23. But this ignores

McMillen's revised technical proposal that addressed these deficiencies and uncertainties, which the Final SSDD documents.  *See* Final SSDD at AR 4551–52.

Similarly, Massman received an initial weakness in Past Performance, which was also resolved by its revised technical proposal.  *Compare id.* at AR 4547 ("Only one of 5 projects submitted [by Massman] was over \$25M in final contract value which imparts risk on the Government due to lack of demonstrated experience with large value contracts."), *with id.* (resolving this weakness because Massman "provided a short narrative, chart showing the description and value of other recent projects well over \$25M, and bonding information from their surety").

Nor was USACE obligated to give Massman a higher Past Performance rating because it received four strengths to McMillen's one in the final evaluation.  It is a maxim of federal procurement law that adjectival ratings do not need to "be added up and 'averaged out.'"  *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 909 n.6 (Fed. Cir. 2013); *Harmonia Holdings Grp., LLC v. United States*, 167 Fed. Cl. 448, 474 (2023) ("The Court . . . will not engage in calculating an agency rating by counting 'Decreases Confidences,' . . . because this court has rejected such an approach.").  Rather, "the reason that strengths and weaknesses are identified" is not to quantify them but "to help ensure that evaluations are thoughtful." *Ft. Carson Supp. Servs. v. United States*, 71 Fed. Cl. 571, 591 (2006); *see also Hyperion, Inc. v. United States*, 92 Fed. Cl. 114, 119 (2010) ("The adjectival ratings are merely a guide.").

Here, the Agency determined "McMillen's individual strength covers *seven* different aspects of performance, which the SSEB notes 'demonstrates solid past performance history regarding the significant planning for successful execution of this project.'"  Def.'s MJAR at 27 (quoting Tab 83 at AR 2498).  Agencies receive what has been called a "triple whammy of deference" when evaluating past performance in a negotiated procurement.  *Gulf Grp. Inc. v. United States*, 61 Fed. Cl. 338, 351 (2004) (citation modified); *see also Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 909 (Fed. Cir. 2013) (affirming past performance rating of "Less than Satisfactory" despite reference ratings of "Satisfactory" or "Better").  Therefore, the Court does not find USACE's judgment unreasonable.

Massman also argues the Agency "improperly considered McMillen's **future** technical approach to resolve its primary uncertainty about McMillen's dearth of past performance."  Pl.'s MJAR at 24 (citing Final SSDD at AR 4551–52).  It is true the Final SSDD uses future-tense language in describing the resolution of McMillen's initial weakness:

> **Uncertainty 2** Offeror fails to demonstrate capability in performing lifts of the size and complexity required for the work described in the solicitation in submitted Past Performance data.  00 22 11, 5.6.2

> **Response 2** In response to the discussion letter, the offeror provided additional details and information on how lifts for the base contract work <u>will be conducted</u>, including equipment, rigging, subcontractors, and means/methods.

Final SSDD at AR 4552 (emphasis added).

But this ignores the response McMillen provided to the Agency on this exact weakness:

> **Uncertainty 2** Offeror fails to demonstrate capability in performing lifts of the size and complexity required for the work described in the solicitation in submitted Past Performance data.  Reference solicitation 00 22 11, paragraph 5.6.2

> **McMillen Response:** McMillen has included additional details within our previous project descriptions that further highlight the relevant crane barge usage within our past construction projects, which draw comparison to the complex barge lift planning, rigging, and flying of large hydraulic steel gates, structures, and members which are highly relevant to the proposed work on the Webbers Falls Tainter Gate Replacement and Repairs contract.

Tab 93d at AR 3033–34 (emphasis added); *see also* Def.'s MJAR at 25–26 (describing the additional evidence).

With this additional context, the SSA's discussion of McMillen's "planned approach" is based on the evidence of its relevant past construction work.  *See DynCorp Int'l*, 10 F.4th at 1315 (holding "explicit explanation is not necessary where the agency's decisional path is reasonably discernable" (citation modified)).

The Final SSDD's language could have been more precise.  But given the high level of deference due USACE's evaluation, the Court finds the Agency's rating of McMillen's Past Performance is reasonable and supported by the record.

### 3. Technical Approach

Finally, Massman argues the Agency "improperly equalized Massman and McMillen's technical approaches when it concluded, without elaboration, that Massman and McMillen were 'technically equivalent,' and that the Agency was 'satisfied that both offerors understand the technical requirements of this solicitation,' resulting in this subfactor being 'equal between the two offerors.'"  Pl.'s MJAR at 26–27 (quoting Final SSDD at AR 4561–62).  Specifically, Massman believes (1) USACE improperly resolved McMillen's weakness on Factor 2, Subfactor 1 (Technical Approach) because McMillen did not adequately explain how it would acquire the crane necessary for the Contract or relevant letters of commitment, and (2) USACE did not adequately credit Massman for its commitment to self-perform (i.e., performance without using subcontractors) major portions of the project, both of which were preferred criteria in the Solicitation.  *Id.* at 27–29.

This argument fails on both grounds.  In its final technical proposal, McMillen committed to performing "with its own in-house craft labor forces, all major work elements of this project." Tab 109a at AR 3239.  Defendant correctly notes "[t]he solicitation did not require McMillen to have a signed contract for date and amount certain for the use of the crane and rigging system. McMillen only needed to demonstrate its 'understanding of the requirements described in the

Division 01 requirements and the plans and technical specifications of the Solicitation and the capability to execute the project.'"  Def.'s MJAR at 30 (quoting Tab 30 at AR 313).

Massman's contention that McMillen improperly switched its proposed cranes after inquiry from the Agency is therefore without merit.  *See* Tab 137 at 4287; Pl.'s MJAR at 19, 29. Identifying or subcontracting for a specific crane was not a stated requirement, and neither Massman nor the Court can graft such a requirement onto the Solicitation after the fact.

Massman also suggests McMillen is actually relying on a subcontractor for the "Marine Construction" phase of the project and, therefore, needed a letter of commitment under the Solicitation.  Resp. at 8–9.  But it does not point to any language in the Solicitation or elsewhere that prohibits the use of a subcontractor.

McMillen's discussion responses indicate it will rely on a subcontractor's equipment and personnel in designing the crane lifting plan.  *See* Tab 93d at AR 3041.  These responses, however, do not contradict its unambiguous proposal statement that it will "self-perform" the lifting itself.  Tab 109a at AR 3239.  Massman's disagreement with the Agency's resolution of this weakness is not sufficient grounds for this Court to "substitute its judgment for that of the agency."  *J.C.N. Const., Inc. v. United States*, 107 Fed. Cl. 503, 515 (2012) (citation omitted). The agency has discretion "to determine compliance with the technical requirements" of the project.  *Ultra Elecs. Ocean Sys. Inc. v. United States*, 139 Fed. Cl. 517, 530 (2018).

Likewise, the Agency did not err in giving Massman a "Good" rather than "Outstanding" rating because of its stated self-performance abilities.  Pl.'s MJAR at 29.  Self-performance was one of seven factors considered as part of Technical Performance, see Tab 30 at AR 313, and Massman received a strength for this element.  Tab 83 at AR 2492.  Both Massman and McMillen received four total strengths under this Factor.  Final SSDD at AR 4547–48, 4552–53. The SSA concluded that each offeror's strengths implicated multiple criteria across the Factor, and therefore "neither offeror holds a distinguishable advantage under this subfactor."  *Id.* at AR 4561.  This analysis reflects "rational reasoning and consideration of relevant factors" under the Solicitation.  *Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1286 (Fed. Cir. 2010) (citation omitted).

Accordingly, the Agency acted reasonably in its Technical Approach ratings.

**C.      USACE's Trade-Off Analysis was Not Arbitrary or Capricious.**

Building on its factor-by-factor arguments, Massman contends USACE engaged in an "arbitrary, capricious, and prejudicial tradeoff analysis."  Resp. at 16.  In its view, "the Agency merely parroted back the strengths and weaknesses of the offerors' proposals and failed to dig deeper than surface level repetition of the SSEB's evaluation."  *Id.* at 17.  But the evaluation is not as superficial as Plaintiff suggests.

For example, Plaintiff argues "the Government adds [the offerors'] strengths without considering their relative, weighted importance."  Resp. at 21–22.  The SSA, however, did just that in the Final SSDD:

Although Massman was evaluated as having an advantage under Factor 3, Performance Capability, this factor is the third most important evaluation factor and is expressly stated to be less important than Factor 2.  Consistent with the stated evaluation factors, I find that McMillen's demonstrated strength in [***] under a subfactor within the more heavily weighted factor offsets Massman's advantage under the less important factor.

Final SSDD at AR 4563.

Plaintiff attempts to analogize this case to two procurement protests where an agency's evaluation of offerors was found improper: *Femme Comp*, 83 Fed. Cl. at 704, and *Sys. Stud. & Simulation, Inc. v. United States*, 146 Fed. Cl. 186 (2019) ("*S3*").  *See, e.g.*, Resp. at 22. Defendant is correct that these cases are distinguishable.  *See* Def.'s MJAR at 20–21.

In *Femme Comp*, the Court found the SSA's best value tradeoffs were arbitrary and capricious because (1) the SSA "did not adequately document her best value tradeoffs in the [SSDD];" (2) the SSDD reflected the SSA's intent to "inflate the technical portions of the low-price offerors' proposals and downplay the technical superiority of the higher-priced offerors' proposals;" and (3) the SSA "emphasized the nature, quality, and extent of a proposal's strengths when it benefitted a lower-priced proposal but often ignored the nature, quality, and extent of a proposal's strengths and relied instead on the adjectival/color ratings when a higher-priced proposal was found to be superior."  *Femme Comp*, 83 Fed. Cl. at 767–69.

Here, the SSA's reliance on the SSEB's analysis and adjectival ratings "is not evidence of a lack of comparative assessment."  *United Concordia Companies, Inc. v. United States*, 99 Fed. Cl. 34, 42 (2011).  "[U]nlike in *Femme,* these equal ratings are the result of a comparison of strengths weighted as to value offered to the agency."  *Id.*; *see, e.g.*, Final SSDD at AR 4561 ("McMillen demonstrated a [***]. Massman similarly demonstrated [***].").

Plaintiff includes a table purporting to demonstrate the SSA's "parrot[ing]" of the SSEB's analysis.  Resp. at 18–20.  But the FAR "allows the SSA to use reports and analysis 'prepared by others,'" including the SSEB's report and ratings.  *United Concordia*, 99 Fed. Cl. at 41 (quoting 48 C.F.R. § 15.308 (2010)).  As in *United Concordia*, the SSA here "relied on [the SSEB report], weighed the rankings, found [the offerors] to be equal in non-price factors, and then selected [McMillen] based upon the substantial savings it offered the government.  This is not irrational nor does it violate the FAR."[7]  *Id.* at 42.

Likewise, there is no evidence that the Agency improperly inflated, disregarded, or altered any of the offerors' strengths or weaknesses in its assessment.  *See Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 795 (Fed. Cir. 1993) (stating government officials are presumed to "perform their duties correctly, fairly, in good faith, and in accordance with law and governing

---

[7] Defendant also correctly notes the SSA did not "wholesale adopt[] the SSEB's finding[s]." Reply at 11; *see, e.g.*, Final SSDD at AR 4560 (declining to adopt the SSEB's "Unacceptable" Factor 4 rating and assigning Massman an "Acceptable" rating because Massman's failure to meet the small business participation goals was not "fatal to the proposal").

regulations" and this presumption is valid and binding unless there is "irrefragable proof to the contrary" (citation modified)).

In *S3*, the Court found the SSA improperly "attempted to equalize the relative merits of the four offerors in the competitive range" despite their ratings differences. 146 Fed. Cl. at 202; *see also FirstLine Transp. Sec., Inc. v. United States*, 100 Fed. Cl. 359, 376 (2011) (finding the SSEB's best-value analysis irrational where it minimized substantial differences between the proposals, and where the protestor's proposal had thirty-three strengths and no weaknesses compared to the awardee's one strength and one weakness). In this case, the two offerors had equivalent ratings except on one factor and one subfactor, which the SSA determined offset each other. *Compare* Final SSDD at AR 4562, *with S3*, 146 Fed. Cl. at 197 (successful protestor's proposal received higher ratings on two factors and equivalent ratings on all others compared to awardee's proposal).

The *S3* Court also faulted the SSA in that case for improperly "emphasizing the government's 'reasonable expectation' that both [the lower-rated awardee] and its competitors could 'successfully perform the services required in the solicitation.'" *Id.* at 202 (citation omitted); *see also FirstLine Transp.*, 100 Fed. Cl. at 377 ("[T]he use of criteria such as whether a proposal is 'acceptable' or 'sufficient' has no place in a best-value tradeoff analysis."). No such language or analysis appears in the Final SSDD here.

While evaluating proposals is not a mathematical exercise, the difference in strengths between Massman (14) and McMillen (12) is easily distinguished from the disparity found in cases such as *FirstLine Transp*. Def.'s MJAR at 10 (citing Tab 83 at AR 2479). USACE's trade-off analysis was not "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Accordingly, Massman's challenge to the Agency's best-value tradeoff analysis fails.

### D.    Massman Suffered Prejudice Based on the Agency's Error.

In order to prevail, Massman must demonstrate it was prejudiced by USACE's error. In other words, Massman must show that had the Agency not erred, Massman had a "substantial chance" of being awarded the Contract. *Bannum, Inc.*, 404 F.3d at 1353. The Agency's rating of Massman as "[***]" and McMillen as "[***]" on the Factor 2 "Organization" subfactor was unlawful, see *supra* Section IV.B.1, and this rating disparity constitutes prejudice:

> [The Agency's Organization ratings] prejudiced Massman because it is the only evaluation factor where McMillen was deemed superior to Massman (the only other evaluation difference being Massman's higher rating on Factor 3, Performance Capability). If the Court concludes that the SSA arbitrarily and capriciously rated offerors differently on the Organization subfactor, the SSA could not have reached a determination of technical equivalence based on Massman's superior Factor 3 rating offsetting McMillen's superior Organization rating.

20

Resp. at 16 (citations omitted).

If Massman's proposal was deemed technically superior, there is a "substantial chance" it would have been awarded the Contract under a best-value analysis. Because the SSA considered both proposals "technically equivalent," he did not conduct a price-technical tradeoff. Final SSDD at AR 4563. A price-technical tradeoff may have favored Massman, particularly because technical factors were considered significantly more important than price. Tab 26 at AR 132; *see Advanced Tech. Sys. Co. v. United States*, 177 Fed. Cl. 443, 458 (2025) (finding prejudice where non-cost factors were significantly more important than price and protestor would have had the technically superior proposal).

### E.    Massman is Entitled to Injunctive Relief.

Because Massman has established a significant, prejudicial procurement error, consideration turns to its request for injunctive relief. The Tucker Act empowers a court to "award any relief that the court considers proper, including declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2). In determining whether to award a permanent injunction, this Court must consider whether (1) the protestor has succeeded on the merits; (2) the protestor will suffer irreparable harm without injunctive relief; (3) the balance of hardships favors injunctive relief; and (4) injunctive relief is in the public interest. *Centech Grp. Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citation omitted).

### 1.    Success on the Merits

Massman has succeeded on the merits as to its argument that the Agency's review of the Organization subfactor was arbitrary and capricious. *See supra* Section IV.B.1. The first factor, therefore, weighs in Massman's favor. *S3*, 146 Fed. Cl. at 203.

### 2.    Irreparable Harm

"[A]ny offeror that should have been awarded a contract, but was not, will be at a disadvantage when competing for future contracts. No adequate remedy exists to make up for this potential loss of business or competitive advantage." *Femme Comp*, 83 Fed. Cl. at 772; *see also RLB Contracting Inc. v. United States*, 118 Fed. Cl. 750, 761 (2014) ("[I]n the context of a bid protest, the loss of an opportunity to compete for an award for which a party would not otherwise be disqualified is sufficient injury to warrant injunctive relief."), *aff'd*, 621 F. App'x 1026 (Fed. Cir. 2015). Because the Agency's award to McMillen was irrational, Massman has established irreparable harm absent injunctive relief. *Kropp Holdings, Inc. v. United States*, 176 Fed. Cl. 512, 562 (2025), *recons. denied*, 180 Fed. Cl. 233 (2026).

### 3.    Balance of Hardships

Defendant has not asserted any hardship from an injunction in this matter, and "[t]he Government has no countervailing interest in awarding this Contract if premised on violations of procurement law, meaning the balance of hardships tips in Massman's favor." Pl.'s MJAR at 33; *see 22nd Century Techs., Inc. v. United States*, 176 Fed. Cl. 389, 402 (2025) ("[T]he harm to the Agency of having to reconsider a procurement in a fair and rational way does not outweigh the

harm to an individual organization that was denied its right to fair consideration."); *Wetsel-Oviatt Lumber Co. v. United States*, 43 Fed. Cl. 748, 753–54 (1999) ("[T]he balance of hardship tips in favor of the plaintiff where . . . the government fails to articulate any harm that it will endure if the injunction is granted.").

### 4.    Public Interest

Finally, "the public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid." *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 663 (2003); *see also Bilfinger Berger AG Sede Secondaria Italiana v. United States*, 94 Fed. Cl. 389, 393 (2010) ("The public interest in preserving the integrity and fairness of the procurement process is served by enjoining arbitrary or capricious agency action . . . ."). "Here, the public interest is best served by requiring the government to comply with federal procurement law—law that was intended to promote competition." *S3*, 146 Fed. Cl. at 204.

In sum, all four factors favor an injunction, and the Court will issue an injunction on further contract performance accordingly. Additionally, consistent with its authority under RCFC 52.2(a), the Court remands this matter to the Agency to reevaluate Massman and McMillen's proposals consistent with this Opinion.[8]

---

[8] Because this matter is remanded to the Agency, awarding bid and proposal costs is not appropriate at this time. *See HII ShipCycle, LLC v. United States*, 180 Fed. Cl. 315, 327 (2026), *appeal filed*, No. 26-1560 (Fed. Cir. March 24, 2026).

## V.    Conclusion

For these reasons, Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 26, is **GRANTED-IN-PART AND DENIED-IN-PART**.  Defendant's Cross-Motion for Judgment on the Administrative Record, ECF No. 29, is **GRANTED-IN-PART AND DENIED-IN-PART**.  Count III of Plaintiff's Amended Complaint is **DISMISSED AS MOOT** pursuant to RCFC 12(h)(3).

The Court orders as follows:

A.    The USACE's award decision under RFP No. W912BV25RA018 is **VACATED**.

B.    The USACE, its officers, agents, and employees, and all other persons acting in concert and participating with them are **ENJOINED** from commencing performance on this Contract absent further order of the Court or a joint stipulation of dismissal.

C.    Pursuant to RCFC 52.2, the case is **REMANDED** for sixty (60) days to the Agency for further proceedings.  The Agency is **ORDERED** to reevaluate the offerors' proposals consistent with this Opinion.  The Agency may conduct a new technical evaluation and/or a new trade-off analysis.  The Agency may, in the alternative, cancel the Solicitation or take other action consistent with this Opinion.   It is further **ORDERED** that within seven days of the remand period ending, the parties shall file either a stipulation of dismissal or a joint status report describing the Agency's decision on remand and proposing further proceedings if necessary.  This case is **STAYED** for sixty days.

Notwithstanding RCFC 52.2(b)(2), counsel of record for the United States **SHALL** provide a copy of this order to the U.S. Army Corps of Engineers, which will constitute service pursuant to that Rule.

**IT IS SO ORDERED.**

 s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge

23